THE ELIZA S. POTTER.

THE HELENA E. RUSSELL.

CHAMPLIN *et al.* v. THE HELENA E. RUSSELL.[1]

*(Circuit Court, D. Connecticut. May 28, 1888.)*

COLLISION—BREACH OF RULES—MANEUVER IN EXTREMIS.

The R. and the P. were sailing upon opposite courses, the R. on the starboard and the P. on the port tack. The former, having the right of way, continued on her course, supposing the P. would keep out of her way, and go astern, but the P., although she saw the red light of the R. two miles off, kept on her course until a collision was inevitable. If the R. had then continued her course, the P. would have struck her, head on, and nearly amidships, causing a disastrous collision. The R. thereupon put her helm hard to starboard, and let her main-sheet run, to diminish the force of the collision, and receive a glancing blow, for the purpose of saving serious injury to herself. *Held,* that this was a change of course made *in extremis,* and was not negligence.

In Admiralty. On appeal from district court. 31 Fed. Rep. 687.

*Samuel Park,* for appellants.

*S. A. Robinson,* for appellee.

LACOMBE, J. This is an appeal in admiralty from a decision of the district court, filed August 1, 1887. 31 Fed. Rep. 687. The collision, which was the subject of investigation before that court, occurred near Hog Island light, at 4 o'clock A. M., March 11, 1887. The Helena E. Russell and the Eliza S. Potter were sailing upon opposite courses, close-hauled, and respectively upon the starboard and port tacks. The lights of both vessels were properly placed, and burning. There was a lookout at the bow of the Russell, but the Potter's lookout had been withdrawn from the bow 10 minutes before the collision to assist in reefing the mainsail. The catastrophe is thus set forth by the district judge:

"The Potter saw the red light of the Russell when she was about two miles off. The Russell had the right of way, and continued on her course, supposing the Potter would keep out of her way, and go astern; but the Potter kept on her course until it was too late, and a collision was inevitable. If the Russell had then continued her course, the Potter would have struck her, head on, and nearly amidships, and would have caused a disastrous collision.' The master of the Russell, perceiving his vessel was about to be struck, put his helm hard to starboard, and let his main-sheet run, to diminish the force of the collision, and receive a glancing blow, for the purpose of saving serious injury to his vessel, and in the exercise of good judgment."

The appellant does not question the ruling of the court that a change of course made *in extremis,* and to reduce the amount of damage about to result from an apparently inevitable catastrophe, is not negligence. His contention is that such rule cannot be applied to the facts of this case;

[1]Affirming 31 Fed. Rep. 687.

in other words, that the court below erred in the conclusions which it drew from the testimony as to the circumstances under which the collision occurred. As to some of these circumstances there was no dispute upon the proof. As to others the testimony below was conflicting. All the witnesses, however, (except those examined on deposition,) were before the district judge; and in determining the weight to be given to their respective stories he had the invaluable assistance which such personal observation always affords. The appellants, however, contend that there is sufficient in the case to show manifest error in some material finding; and further undertake, by the introduction of new testimony, to turn the scales upon the points in conflict. Their assignments of manifest error seem to be these:

1. That "the court found, as proved, that the Potter was sailing upon an easterly course, upon her port tack, about four miles an hour. The Russell was sailing at about the same rate of speed *upon a westerly course*, on the starboard tack. If the Russell had then continued her course, the Potter would have struck her, head on, and nearly amidships, and would have caused a disastrous collision." Except by the use of italics in the above quotation, there is no indication in the appellant's brief as to what error it is supposed that this excerpt from the opinion evidences. It need not, therefore, be considered.

2. That the evidence offered on behalf of the Russell as to the position of the two vessels when first discovered should have been discredited by the court as being wholly irreconcilable with the testimony as to the subsequent movements of the vessels. The appellants' theory as to this seems to be based upon the belief that the testimony, which he finds "incredible" and "incapable of any reasonable interpretation," is to the effect that when the Potter was first seen she was three miles away; that she then showed both her lights, and continued to show them down to the moment of collision. What the witnesses in fact say is that when they first saw the Potter she was about three miles off, and that they then saw her sails. At a subsequent period (which one witness describes as "when she was close by") they both saw her lights, which, from that time, they continued to see up to the moment of the collision. There is nothing incredible about this statement.

3. The material point in the case is, of course, the time when the Russell starboarded her wheel. As to this the appellant finds the testimony "incredible, and such as practical seamanship and nautical science conclusively demonstrate the absurdity of." Here again he seems to misapprehend just what that testimony is. If it were claimed on behalf of the Russell that her captain did not turn his wheel to starboard until his jib-boom was in physical contact with the outer stay of the Potter, there might be force in the argument that such a statement was incredible, because, at the rate of speed at which the vessels were moving, the position of the Russell could not have changed sufficiently up to the moment of the collision to have brought them into contact in the manner described. Such an interpretation of the testimony, however, is hypercritical. Before the wheel was starboarded the lookout on the port bow

of the Russell had repeatedly shouted to the Potter to keep off. Nobody seemed to pay attention to this call, and, having held upon her starboard tack for some time after the shouting began, the Russell starboarded. The change of course resulting from this maneuver became manifest to the two lookouts on her bow when the vessels were about 100 feet apart, or, as one of them says, a vessel's length, and as her bow swung around the jib-boom grazed the stay. Assuming that the witnesses for the Russell gave their evidence in such a manner as to impress the court with a sense of their honesty and credibility, there is nothing in the narrative of the occurrence, as it may be drawn from their statements, considered as a whole, which demonstrates the absurdity of such narrative. The new evidence introduced by the appellants is that of the master of the Potter. He testifies that the Russell was keeping off, and was swinging off very fast while still about eight or ten vessel lengths ahead of him. This witness, however, testified in the district court that he gave the Russell the right of way by putting his wheel to port when more than a mile off. Having seen him, and heard his testimony, the district judge reached the conclusion that the accident was occasioned by the negligence of the officers of the Potter in not keeping off and away from the Russell, and in not yielding to her the right of way. With such an indication as to the weight accorded to his statements by the district judge before whom he appeared, this court, which has neither seen nor heard him, will not reverse the decision below upon his brief additional statement; a statement in flat contradiction with the story told by all the Russell's witnesses.